IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SUSAN ROSE,<br><br>                     Plaintiff,<br><br><br>        vs.<br><br><br>UTAH STATE; UTAH STATE BAR; BILLY WALKER; CAROLYN COX; BARBARA TOWNSEND; ARTHUR BERGER; JOYCE SMITH; and other JOHN AND JANE DOES as yet to be identified, named jointly and severally, officially and personally,<br><br>                Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:09-CV-695-TC |

Plaintiff Susan Rose, currently an attorney admitted to practice in Utah, is in the midst of ongoing disciplinary proceedings prosecuted by the Utah State Bar against her in a Utah state court.  Ms. Rose has since filed suit in this court against the State of Utah,[1] the Utah State Bar and three of its officials, and two attorneys who filed complaints with the Bar against Ms. Rose. This matter comes before the court on various motions to dismiss and for summary judgment.[2] For the reasons set forth below, the court dismisses all of the Defendants on various grounds, including Eleventh Amendment immunity, the _Younger_ abstention doctrine, and failure to state a

---

[1]Ms. Rose confusingly refers to the State of Utah as "Utah State," which in local parlance is a term for the educational institution called Utah State University.

[2]The court finds that oral argument will not materially aid the court in its analysis, so the court's decision is based on the briefs.

claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3]

## BACKGROUND

On December 10, 2007, the Utah State Bar filed a complaint against Ms. Rose in Utah's Third Judicial District Court.  The State Bar's complaint charges Ms. Rose with twelve counts of violating Utah's Rules of Professional Conduct for attorneys and seeks disciplinary sanctions against her.  The complaint's allegations involve Ms. Rose's conduct in representing clients in two cases, one case in federal court and the other in state court.

The State Bar filed the complaint against Ms. Rose as one step in its disciplinary process.  But three events preceded filing the complaint.  First, an informal complaint was filed against Ms. Rose in the State Bar's Office of Professional Conduct.  Then a screening panel of the State Bar's Panel of Ethics and Discipline Committee (EDC) held a hearing concerning the informal complaint.  After the hearing, the screening panel recommended that a formal complaint against Ms. Rose be filed in district court.  That was done by the Utah State Bar in December 2007, when Barbara Townsend, Assistant Counsel to the Office of Professional Conduct (OPC) of the Utah State Bar, filed a disciplinary complaint in Third Judicial District Court for the State of Utah.  The complaint was filed "on behalf of the Utah State Bar, Office of Professional Conduct as directed by the Ethics and Discipline Committee of the Utah Supreme Court."  (Compl. In the Matter of the Discipline of: Susan Rose, #07985, Civil No. 070917445, at 25 (attached as Ex. A to Utah State Bar Defs.' Mem. Supp. Mot. Dismiss (Docket No. 7)).)

The action in state court is ongoing.  Ultimately, the state district court adjudicating the

---

[3]This ruling moots all other outstanding motions.

complaint against Ms. Rose will conduct a two-phase bench trial.  The state court will first try the

merits of the complaint and then hold a trial on sanctions, if any.  Ms. Rose or the State Bar may

appeal the district court's rulings to the Utah Supreme Court.  Apparently a trial on the merits has

not yet occurred.

In 2008, Ms. Rose filed a complaint in this court targeting the state disciplinary

proceedings against her.  In that complaint, she named as defendants the Utah State Bar, the

Bar's Office of Professional Conduct, the Utah Supreme Court's Ethics and Discipline

Committee, Barbara Townsend and Arthur Berger.  She sought a declaration that the State Bar's

disciplinary rules and procedures violate the First, Fifth, and Fourteenth Amendments of the

United States Constitution, and an injunction barring the named defendants from continuing to

pursue the state court disciplinary action against her.

On October 1, 2008, this court dismissed Ms. Rose's federal action without prejudice on

the basis that the court should abstain from exercising jurisdiction over the case because it

involved an ongoing state judicial proceeding in which Ms. Rose was able to have her

constitutional challenges adequately heard.  (See Order & Mem. Decision (Docket No. 52) in

Rose v. Utah State Bar, Case No. 2:08-CV-592 (D. Utah).)

Despite the earlier dismissal, Ms. Rose now attempts to revive her claim through a second

complaint (the one at issue here) that makes similar allegations and expands the causes of action

and list of defendants.

She continues her suit against the Utah State Bar, its officials Ms. Townsend (the attorney

prosecuting the disciplinary action in state court) and Mr. Berger (Chair of the Ethics and

Discipline Committee for the Utah Supreme Court).  She also names Billy Walker, senior

counsel for the Bar.  All are named in their individual and official capacities.  She has added the State of Utah as a defendant,[4] and she has added two private attorneys—Carolyn Cox and Joyce Smith—who were opposing counsel in cases involving Ms. Rose and who filed informal complaints with the Bar concerning Ms. Rose's conduct in those cases.

She continues to seek declaratory and injunctive relief, claiming that the Defendants have violated her constitutional rights to free speech, freedom to petition, due process, equal protection, and freedom from illegal takings.  She contends that her case is not brought under 42 U.S.C. § 1983, but rather is brought under the Supremacy Clause.  She has added a claim for monetary damages, further alleges breach of contract against all Defendants, and adds state law causes of action against the individual Defendants for conversion, conspiracy, and intentional infliction of emotional distress.

## ANALYSIS

### Legal Standard for Rule 12(b)(6) Motions to Dismiss

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which

---

[4]There is confusion about whether the State Court Administrator was named as a party here.  (See Utah Court Administrator's Mem. Supp. Mot. Dismiss (Docket No. 48) at 2 ("This defendant does not know if it is a defendant in the litigation.  As explained below, no cause of action appears in the complaint and petition which identifies wrongdoing on the part of this party.  This party is not even named in the caption of the complaint. [But] general counsel for the Utah Court Administrator's office [was served with a summons.]").  Ms. Rose responded in her "Notice to the Court" that the "office of Utah's State Court Administrator is Not a Party at this time."  (Docket No. 57 at 1.)  Her explanation: "In order to ensure that Utah State's judicial branch was served, in [sic] behalf of the State of Utah, the State Court administrator and the Attorney General's office were both served in [sic] behalf of Utah State."  (Id.)  Given all of the factors discussed in those two papers, the court concludes that the Utah Court Administrator is not a party and so the motion seeking dismissal of a non-party (Docket No. 47) is DENIED AS MOOT.

4

relief may be granted, the court must presume the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations.  Tal v. Hogan, 453 F.3d 1244, 1252 (2006), cert. denied, 127 S. Ct. 1334 (2007); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). Conclusory allegations are allegations that "do not allege the factual basis" for the claim.  Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995).  See also Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based") (emphasis added).  The court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  And although all reasonable inferences must be drawn in the non-moving party's favor,  Tal, 453 F.3d at 1252, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, quoted in Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).  Stating a claim under Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555).

**Eleventh Amendment Immunity**

"Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity."  Green v. Mansour, 474 U.S. 64, 68 (1985).

Here, the State of Utah has not consented to suit in federal court.[5]  Because it is immune from suit under the Eleventh Amendment, the court must dismiss the State as a matter of law. See, e.g., Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989);  V-1 Oil Co. v. Utah State Dep't of Public Safety, 131 F.3d 1415, 1420 (10th Cir. 1997).  "Eleventh Amendment immunity applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages."  Steadfast Ins. Co. v. Agricultural Ins. Co., 507 F.3d 1250,1252 (10th Cir. 2007); see also V-1 Oil Co., 131 F.3d at 1420 (same).[6]

Moreover, the "arm-of-the-state doctrine bestows immunity on entities created by state governments that operate as alter egos or instrumentalities of the states."  Watson v. University of Utah Med. Ctr., 75 F.3d 569, 574 (10th Cir. 1996).   To determine arm-of-the-state status, the court must look to particular state laws characterizing the entity.  Sturdevant v. Paulsen, 218 F.3d 1160, 1164 (10th Cir. 2000).

Article VIII, Section 4 of the Utah Constitution gives the Utah Supreme Court the power

---

[5]Nothing in the record shows that Utah has waived its Eleventh Amendment immunity or that Congress abrogated such immunity concerning civil rights claims.  "Generally, we will find a waiver either if the State voluntarily invokes our jurisdiction, or else if the State makes a clear declaration that it intends to submit itself to our jurisdiction."  Wagoner County Rural Water Dist. No. 2 v. Grand River Dam Authority, 577 F.3d 1255, 1258 (10th Cir. 2009).  Such circumstances simply do not exist here.  And to the extent that the State of Utah may have waived immunity for contract claims, that issue is moot because the court must abstain from addressing that issue.

[6]There is one exception to Eleventh Amendment immunity.  Under the Ex Parte Young exception, state officials named in their official capacities are not immune from claims seeking prospective injunctive relief.  Green, 474 U.S. at 68; Ruiz, 299 F.3d at 1180; V-1 Oil Co., 131 F.3d at 1421.  But because the court concludes that it must abstain from ruling on Ms. Rose's claims alleging problems with the disciplinary proceeding in state court, the court need not address, much less apply, the exception.  It is not relevant in light of the court's non-discretionary abstention.

to govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law.  See also Utah State Bar v. Summerhayes & Hayden, Public Adjusters, 905 P.2d 867, 870 (Utah 1995) (holding that it "has the exclusive authority to regulate the practice of law in Utah.  This authority includes the power to determine what constitutes the practice of law and to promulgate rules to control and regulate that practice.") (internal citations omitted).

To accomplish its constitutional duty, the Utah Supreme Court promulgated the Supreme Court Rules of Professional Practice, which include the "Utah Rules of Professional Conduct" (Chapter 13 in the Judicial Council Rules of Judicial Administration) and the "Utah Rules Governing the Utah State Bar" (Chapter 14 in the Judicial Council Rules) (collectively, the "Rules").  Ultimate enforcement of the Rules rests with the Utah Supreme Court, but prosecution of Rules violations is delegated to the Utah State Bar.  See Rule 14-102 ("Under the power vested to it by the Constitution of Utah, the Supreme Court hereby authorizes and designates the Bar to administer rules and regulations which govern the practice of law in Utah.").  Rule 14-102 specifically authorizes the State Bar to "assist the Court" in carrying out its constitutional authority.  The Bar's delegated duties include the responsibility "to provide for the . . . discipline of persons practicing law."  Rule 14-102(b)(4);  see also Rule 14-202 (listing purposes of the Bar, including aiding the courts in administering justice and providing regulation and discipline of Utah attorneys).

Under the Rules, the Ethics and Discipline Committee is a committee of the Utah Supreme Court.  Rule 14-503(a).  It is not a branch or function of the Utah State Bar, but a separate entity whose members are directly appointed by and work under the Utah Supreme

Court.  See id.

The court concludes that the Utah State Bar is an arm of the State because it is acting as an alter ego of the Utah Supreme Court.[7]  Accordingly, it too is immune from suit.  See Sturdevant v. Paulsen, 218 F.3d 1160, 1162 (10th Cir. 2000) (entity acting as alter ego of state (rather than political subdivision of state) is "arm of state" and so immune from suit under Eleventh Amendment).  And each of the Utah State Bar officials who have been named in their official capacities are also immune.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 113 (1984); Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002); V-1 Oil Co., 131 F.3d at 1420-21.

Accordingly, under the Eleventh Amendment immunity doctrine, the court dismisses all of Ms. Rose's claims against the State of Utah, the Utah State Bar, Billy Walker in his official capacity, Barbara Townsend in her official capacity, and Arthur Berger in his official capacity. See, e.g., V-1 Oil Co., 131 F.3d at 1422 (dismissing claims seeking retroactive monetary reimbursement and declaration that state officers violated federal law in the past).

**Abstention under *Younger v. Harris***

The crux of this action is that Ms. Rose wants the ongoing State Bar disciplinary action against her halted.  This type of case is controlled by the United States Supreme Court's opinion in  Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982).  In Middlesex, the Court upheld a federal district court's dismissal, on abstention grounds, of a constitutional challenge to New Jersey's attorney disciplinary rules brought by an attorney in an

---

[7]Indeed, Ms. Rose, in her Verified Complaint, alleges that the Utah State Bar is an arm of the State.  (See Verified Compl. ¶¶ 165, 203(f).)

ongoing disciplinary proceeding.  See id. at 437.  The Middlesex Court began its analysis by

explaining the abstention doctrine as follows:

> Younger v. Harris, [401 U.S. 37 (1971)], and its progeny espouse a strong federal policy
> against federal-court interference with pending state judicial proceedings absent
> extraordinary circumstances.  The policies underlying Younger abstention have been
> frequently reiterated by this Court.  The notion of "comity" includes "a proper respect for
> state functions, a recognition of the fact that the entire country is made up of a Union of
> separate state governments, and a continuance of the belief that the National Government
> will fare best if the States and their institutions are left free to perform their separate
> functions in their separate ways."  Minimal respect for the state processes, of course,
> precludes any presumption that the state courts will not safeguard federal constitutional
> rights.

457 U.S. at 431 (citations omitted).

The Middlesex Court identified three relevant inquiries to determine the propriety of the

district court's abstention:

> The question in this case is threefold: first, do state bar disciplinary hearings within the
> constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing
> state judicial proceeding; second, do the proceedings implicate important state interests;
> and third, is there an adequate opportunity in the state proceedings to raise constitutional
> challenges.

Id. at 431.  The Court answered all three questions in the affirmative.  See id. at 432-437.

Accordingly, the Court found that the district court correctly abstained, and that dismissal was

proper.  See id. at 437.

The Middlesex Court's reasoning is squarely on point here.  First, as in New Jersey, the

Utah Supreme Court is empowered to govern the practice of law by the state constitution.  See

Utah Const., art. VIII, § 4.  Moreover, there is no question that attorney disciplinary proceedings

in Utah are judicial in nature: the disciplinary complaint against Ms. Rose is proceeding in Utah

state district court, and any appeal will be heard by the Utah Supreme Court.  It is obvious, then,

9

that there is an ongoing state judicial proceeding involved here.  Second, <u>Middlesex</u> makes clear

that overseeing professional conduct of attorneys is an important state interest.  <u>See id.</u> at 434-35.

Finally, it is presumed that the Utah state court proceedings are an adequate forum for Ms. Rose

to raise her constitutional and state law challenges.  <u>See id.</u> at 431, 435.  The presumption is

particularly apt here, since the state district court is competent to hear such challenges, and the

Utah Supreme Court has the power to review the district court's rulings.   Moreover, Ms. Rose

does not allege facts that demonstrate that the court proceedings are inadequate, such as a rule

against bringing a constitutional challenge during the disciplinary proceedings.[8]  In sum, all of

the criteria for abstention are met here.  <u>See also</u> <u>Landrith v. Hazlett</u>, 170 Fed. Appx. 29, 31 (10th

Cir. 2006) (upholding abstention in case challenging constitutionality of ongoing Kansas state

attorney disciplinary action).

There are two circumstances in which a court may elect to review an ongoing state

judicial proceeding.  First, a court may refuse to abstain if the state court proceedings are

"flagrantly and patently" unconstitutional.  <u>Middlesex</u>, 457 U.S. at 437.  Second, a court may

decline to abstain if there are exceptional circumstances, such as bad faith or harassment,

involved in the state process.  <u>See id.</u> at 429, 437.  Ms. Rose does not claim that the State Bar has

filed its complaint against her in bad faith or as a form of harassment.

On the question of constitutionality, Ms. Rose argues that the federal courts have

exclusive jurisdiction to discipline her for any actions she took in representing clients in a federal

---

[8]She alleges that the Utah Supreme Court disciplinary rules do not allow her to bring her
claims.  But the question is whether she has the opportunity to bring her federal and state claims
in the Third District Court for the State of Utah.  There she does have such an opportunity.
Accordingly, her argument fails.

court and that a state court may not review those actions.  In effect, Ms. Rose argues that states

are preempted (by what she calls the "Constitutional Design" under the Supremacy Clause) from

disciplining attorneys for their conduct in federal court.  Ms. Rose, however, does not provide

any authority directly supporting this proposition, and the relevant cases the court reviewed held

the opposite.  For example, in Cantenella v. California, 404 F.3d 1106, 1110 (9th Cir. 2005), the

court rejected an attorney's "unsupported contention that states have no interest in regulating

attorney misconduct occurring in federal court."  The court reasoned that:

> "States traditionally have exercised extensive control over the professional conduct of
> attorneys," as each state has "an extremely important interest in maintaining and assuring
> the professional conduct of the attorneys it licenses."  This extensive control has
> traditionally included the power to discipline attorneys for misconduct regardless of the
> jurisdiction in which it occurs.
>
> The States' long-arm regulatory authority over the attorneys they license derives in part
> from the nature of disciplinary proceedings.  They are "neither civil nor criminal, but an
> investigation in to the conduct of the lawyer-respondent." . . .  Because the relevant state
> interest is an attorney's integrity and continuing fitness to practice, rather than the
> integrity of the particular courtroom in which misconduct occurs, the venue is irrelevant
> to the reach of the state disciplinary authority.
>
> Accordingly, we have specifically held that the Supreme Court of California has
> jurisdiction to discipline members of the State Bar of California who practice even
> exclusively in federal court or before federal agencies.  In rejecting the argument that
> California's regulatory authority is preempted by federal law, we noted that the applicable
> federal regulations condition federal bar membership on an attorney's good standing as a
> member of a state bar and thereby invite or at least accommodate overlapping state
> regulation

Id. (citations omitted).  Cantenella's reasoning is persuasive here.

In sum, the court is not convinced by Ms. Rose's argument that the State Bar may not

seek to discipline her for alleged misconduct in a federal case.  Nor does anything else in Ms.

Rose's verified complaint lead to the conclusion that any other aspect of the State Bar's

proceedings against her are flagrantly or patently unconstitutional.

When the criteria for abstention are met, as they are here, abstention is non-discretionary. See Crown Point I, LLC v. Intermountain Rural Elec. Ass'n, 319 F.3d 1211, 1215 (10th Cir. 2003). Accordingly, the court abstains from reaching all claims raised against the State of Utah, the Utah State Bar, and the Bar officials in their individual and official capacities.

**Federal Civil Rights Claims Under 42 U.S.C. § 1983**

State of Utah, Utah State Bar, and State Officials

Alternatively, all of Ms. Rose's § 1983 claims against the State entities and officials fail as a matter of law because a State, any arm-of-the-state, and state officials sued in their official capacities are not "persons" under the federal civil rights statute. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).[9]

Private Individual Defendants Cox and Smith

To state a claim for relief under § 1983, Ms. Rose must allege that she was deprived of a right secured by the United States Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. American Mfrs. Mut. Ins. Co. v. Sullivan,

---

[9]Ms. Rose adamantly states that she is not bringing any claims under 42 U.S.C. § 1983. Instead, she claims she is relying on the Supremacy Clause to support her causes of action, and cites to Wilderness Soc'y v. Kane County, ___ F.3d ___, No. 08-4090, 2009 WL 2777712 (10th Cir. Aug. 31, 2009) to bolster her argument. Wilderness Society does not support her claim. In that case, the court held that a private individual may bring an action for declaratory or injunctive relief under the Supremacy Clause to determine whether a particular state law is pre-empted by a federal statute, even if the federal statute does not create a private right of action. Here, Ms. Rose does not cite to any federal statute that remotely suggests that federal courts have exclusive jurisdiction to regulate the practice of law in the State of Utah (or any other state for that matter). Moreover, nothing in Wilderness Society suggests that she would have a cause of action against a private individual under the Supremacy Clause. Her reliance on Wilderness Society is misplaced.

526 U.S. 40, 49-50 (1999) ("the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful") (internal quotation marks and citations omitted).  Ms. Rose's civil rights claims against Ms. Cox and Ms. Smith do not satisfy the state action requirement.

Because Ms. Cox and Ms. Smith are not state officials, the issue is whether their "allegedly unconstitutional conduct is fairly attributable to the State." Id. at 50.  According to Ms. Rose's Verified Complaint, Ms. Cox and Ms. Smith have been added to this suit because they filed informal complaints with the Utah State Bar against Ms. Rose.  Ms. Smith and Ms. Cox (as private attorneys) are not state actors.  Under certain circumstances, however, private actors may act "under color of state law" and so be liable under § 1983.  Crabtree v. Muchmore, 904 F.2d 1475, 1480 (10th Cir. 1990) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)). That is, if the private party is found to jointly participate with a state official in a conspiracy to violate a constitutional right, then the private party may be liable under § 1983.  Lugar v. Edmondson Oil Co., 457 U.S. 922, 931, 937 (1982).

> Conspiracy necessarily involves a plan to accomplish a common goal, preconceived and agreed upon by the alleged conspirators; concerted action as used in this context requires only willful participation in a joint activity.  The requirements however for pleading "state action" under this "joint participation" theory are no less stringent than the requirements for pleading a conspiracy.

Crabtree, 904 F.2d at 1481.

Ms. Rose generally avers conspiracy without providing any supporting facts.  (See Verified Compl. ¶ 11 ("The Defendants are working in concert with, conspiring [with] each other."); ¶ 52 ("Defendant Walker, working with the bar complainants used their bar complaints, and filed informal complaints . . . on [sic] this attorney . . . ."); ¶ 53 (Defendant Walker and

Townsend (staff of OPC and secretary to the EDC) and Defendant Berger (who is over the ethics and discipline screening panels) working in concert with the bar complainants, held screening panel hearings."); ¶ 54 ("A public BAR COMPLAINT was filed in 3rd District Court, Dec. 12, 2008, supervised by Defendant Walker, drafted and signed by Defendant Townsend, and signed, approved, and authorized by Defendant Berger, based upon the cooperation of bar complainants Cox and Smith."); ¶ 55 ("By the terms of RLDD rule 14-510,[10] defendants had to conspire with each other, work in concert with each other to claim their actions were for the public purpose of State regulation of attorneys."); ¶ 58 ("The Defendants sought for and obtained the Utah State Bar Association's support and funding of their artifice, all working together to injure this attorney . . . ."); ¶ 67(c) (alleging that Ms. Cox was "cooperating and conspiring with" the other Defendants); ¶ 67(d) (alleging that Ms. Smith  was "cooperating and conspiring and acting in concert with" the other Defendants).)  Such vague and conclusory allegations are not sufficient to survive a motion to dismiss.  See, e.g., Crabtree, 904 F.2d at 1480-81 ("mere conclusory allegations with no supporting factual averments are insufficient" to allege state action conspiracy); Benavidez v. Gunnell, 722 F.2d 615, 618 (10th Cir. 1983) (conclusory allegations of conspiracy not enough to establish conspiracy between private parties and public officials).

The acts that are adequately alleged[11]—i.e., independently filing informal complaints against Ms. Rose with the Utah State Bar—do not fall within the definition of state action.  See, e.g.,  Scott v. Hern, 216 F.3d 897, 906 (10th Cir. 2000) ("A private individual does not engage in

---

[10]Rule 14-510 sets forth the process for filing informal complaints of unprofessional conduct and the procedures for following up on such complaints.

[11](See Verified Compl. ¶¶ 48-51.)

state action simply by availing herself of a state procedure."); <u>Crabtree</u>, 904 F.2d at 1481-82

("The requisite joint participation envisioned by the Supreme Court goes beyond the mere use of

the state court system by private litigants in the course of an ordinary lawsuit."); <u>Benavidez</u>, 722

F.2d at 618 ("The mere furnishing of information to police officers does not constitute joint

action under color of state law which renders a private citizen liable under §§ 1983 or 1985.");

<u>Hoai v. Vo</u>, 935 F.2d 308, 313 (D.C. Cir. 1991) ("It is well established that mere recourse to state

or local court procedures does not by itself constitute 'joint activity' with the state sufficient to

subject a private party to liability under section 1983."); <u>Read v. Klein</u>, 1 Fed. Appx. 866, 871

(10th Cir. 2001) ("[A] private party's 'mere invocation of state legal procedures' does not

constitute joint participation and thus is not state action.") (internal citation omitted).

Accordingly, all civil rights claims against Ms. Cox and Ms. Smith (the First, Second, Third, and

Fourth Claims) are hereby dismissed.

> ### Takings Claims Are Not Ripe

The disciplinary action brought against Ms. Rose does not specify the relief sought by the

Utah State Bar.  That is, it does not specifically request that she be disbarred.  Moreover, the

proceedings are ongoing and Ms. Rose continues to hold her license and right to practice law in

the State of Utah.  Her characterization of her injuries as losses does not withstand scrutiny.  The

issues for takings (and conversion for that matter) are, at a minimum, not ripe.

## State Law Claims

> ### Breach of Contract

The court has abstained from reaching this claim against the State of Utah, the State Bar,

and the State Bar officials.  As for the remaining individual defendants, Ms. Rose has not alleged

that a contract exists between them.  She focuses on what she perceives to be a contract between

herself and the Utah State Bar, based on her membership in the Bar.  Such a contract has no

connection to the individual defendants (Mr. Walker, Mr. Berger, Ms. Townsend, Ms. Cox, and

Ms. Smith).  Accordingly, this claim is dismissed against those individual Defendants with

prejudice.

<u>Intentional Infliction of Emotional Distress</u>

Ms. Rose brings this cause of action against the individual Defendants.  But she has not

pleaded the necessary elements of the claim.  To succeed on a claim for intentional infliction of

emotional distress, a plaintiff must prove that "(i) the defendant's conduct is outrageous and

intolerable in that it offend[ed] . . . generally accepted standards of decency and morality; (ii)

defendant intend[ed] to cause, or act[ed] in reckless disregard of the likelihood of causing,

emotional distress; (iii) plaintiff suffer[ed] severe emotional distress; and (iv) defendant's

conduct proximately caus[ed] the emotional distress."  <u>Hatch v. Davis</u>, 102 P.3d 774, 787 (Utah

Ct. App. 2004).

According to Ms. Rose's complaint, Ms. Cox and Ms. Smith each filed an informal

complaint against her with the Utah State Bar.  Although it is not altogether clear from the

allegations, she seems to further contend that Ms. Cox and Ms. Smith cooperated with the Bar

officials investigating the complaints.  But this type of conduct, which is anticipated and

provided for by the Utah Supreme Court rules, is far from the conduct necessary to establish the

tort of intentional infliction of emotional distress.  <u>See, e.g.</u>, <u>Gulbraa v. Corporation of the</u>

<u>President of the Church of Jesus Christ of Latter-day Saints</u>, 159 P.3d 392, 396 (Utah Ct. App.

2007) (requiring a showing of actions that would be "considered outrageous and intolerable in

16

that they offend against the generally accepted standards of decency and morality") (internal

citation omitted).

Accordingly, Ms. Rose's claims of intentional infliction of emotional distress are

dismissed with prejudice.

<u>Conversion</u>

Under Utah law, to sustain an action for conversion, a plaintiff must prove "an act of

wilful interference with a chattel, done without lawful justification by which the person entitled

thereto is deprived of its use and possession." <u>Phillips v. Utah State Credit Union</u>, 811 P.2d 174,

179 (Utah 1991) (quotation omitted).   Here, Ms. Rose's claims for conversion fail because she

has not alleged that she has been deprived of any property.  She still has her professional license,

education and work experience, her client's contracts, and her right to contract (assuming these

are chattel that would be covered by a claim for conversion).  Accordingly, the court dismisses

Ms. Rose's seventh, eighth, and ninth claims with prejudice.

<u>Conspiracy</u>

The court finds that this claim is subsumed within Ms. Rose's civil rights claims.

Accordingly, it fails for the same reasons that the civil rights claims fail.

**ORDER**

For the reasons set forth above, the court GRANTS the Utah State Bar Defendants'

Motion to Dismiss (Docket No. 6), and the State of Utah's Motion to Dismiss (Docket No. 66).

The court GRANTS IN PART AND DENIES IN PART Defendant Carolyn Cox's Motion to

Dismiss (Docket No. 78) (specifically, Ms. Cox is dismissed as a Defendant but the court

declines to enjoin Ms. Rose from filing lawsuits against Ms. Cox).  All other remaining motions

(Docket Nos. 47, 51, 70, 93, 105, 108, 112, 127, and 135) are DENIED AS MOOT.

The court further orders that Susan Rose's Verified Complaint For Damages (Docket No. 1) is DISMISSED against ALL DEFENDANTS;  her Verified Petition for an Extraordinary Writ (Docket No. 3) is DENIED; her Petition for a Three Judge Panel (Docket No. 4) is DENIED; and her Verified Petition for a Temporary Restraining Order & Preliminary Injunction (Docket No. 2) is DENIED.

DATED this 16th day of December, 2009.

BY THE COURT:

TENA CAMPBELL
Chief Judge

18